2019-09457

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LEON STERLING, | ) |
| Plaintiff, | ) |
| v. | ) Case No. |
| THE KANSAS CITY SOUTHERN RAILWAY COMPANY, | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

## COMPLAINT

NOW COMES the Plaintiff, LEON STERLING, by and through his attorneys, Marc J. Bern & Partners LLP, and complains and alleges against Defendant, THE KANSAS CITY SOUTHERN RAILWAY COMPANY, as follows:

## INTRODUCTION

1. This suit arises out of the negligence of Defendant KANSAS CITY SOUTHERN RAILROAD COMPANY (hereinafter "Defendant") that directly caused and resulted in Plaintiff's colorectal cancer.

2. The Federal Employers' Liability Act, 45 U.S.C. Sec. 51 et seq., (hereinafter "FELA") and the Federal Locomotive Inspection Act, 49 USC § 20701, provides for this cause of action and grants this Court concurrent jurisdiction over it.

## PARTIES AND VENUE

3. Plaintiff is an adult individual residing in the city of Denham Springs, in the state of Louisiana.

4. Defendant is a corporation organized under the laws of the State of Missouri with

its principal place of business in the city of Kansas City, County of Jackson, State of Missouri.

5. Plaintiff worked for Defendant from approximately 1970 until 2005 throughout the State of Louisiana and Arkansas.

## **GENERAL ALLEGATIONS**

6. Plaintiff worked for Defendant from approximately 1970 until 2005 as a laborer, brakeman, and conductor.

7. As part of his employment with Defendant, Plaintiff worked throughout Louisiana, in yards in New Orleans and Baton Rogue, and in Arkansas.

8. During the course and in the scope of his employment with Defendant, Plaintiff was engaged in the furtherance of interstate commerce within the meaning of FELA.

9. Defendant was, at all times relevant to this complaint, engaged in interstate commerce in and throughout several states of the United States as common carriers by rail and for the purposes hereof did operate locomotives, railroad cars and repair facilities and transacted substantial business throughout the various states of the United States.

10. Defendant, at all times relevant to this complaint, conducted substantial business within the state of Louisiana. Defendant owned, managed, maintained, used and conducted substantial operations at multiple major facilities and offices, all located within the state of Louisiana, including the operation of regularly scheduled trains arriving into and departing from its multiple facilities in New Orleans and Baton Rogue, Louisiana. Defendant derived substantial revenue from operations within the state of Louisiana and continues these operations to this day.

11. During the course and scope of Plaintiff's employment during his career with Defendant and while working in its yards, along its right of ways, rails, buildings, locomotives, freight cars, and passenger cars, Plaintiff was, on a daily basis throughout his career, regularly and

routinely exposed to various toxic substances and carcinogens known to cause cancer including diesel exhaust/fumes/smoke, including benzene and polycyclic aromatic hydrocarbons ("PAHs"); creosote; and asbestos dusts, particulate, and fibers (hereinafter, collectively, "the toxic substances") and potentially others that may be discovered during litigation.

12. Specifically, while working for Defendant, Plaintiff was exposed to diesel exhaust/fumes/smoke, including benzene and PAHs by inhalation and/or skin absorption because he would work in and in close proximity to running and idling locomotives and other diesel-powered machinery, during which time he would be exposed to the fumes and its constituents.

13. Specifically, while working for Defendant, Plaintiff was exposed to asbestos dusts, particulate, and fibers by inhalation and/or skin absorption because he rode in and worked in cabooses which contained asbestos. Plaintiff's work also required him to work with and/or in close proximity to locomotive brake shoes which were made at least partly with asbestos, exposing him by inhalation and/or skin absorption to asbestos fibers on a daily basis.

14. Specifically, while working for Defendant, Plaintiff was required to work in close proximity to creosote, a dark brown oil distilled from coal and used as a wood preservative for railroad ties which contains, among other toxic substances, benzene and Polycyclic Aromatic Hydrocarbons such as benzo[a]pyrene, and was exposed to it when unloading and handling railroad ties.

15. Plaintiff's exposure to the above referenced toxic substances, which are known cancer causing agents, steadily over a course of many years caused, in whole or in part, his development of cancer.

16. Plaintiff's exposure to the toxic substances occurred regularly and routinely, on a daily basis, by touch, inhalation and/or consumption at all of the locations Plaintiff worked and

performed his regular, routine job duties for Defendant.

17. Plaintiff's exposure to the toxic substances was cumulative and occurred at different and variable exposure levels over the course of his career for Defendant, depending on the variable workload of a given day on the job.

18. The toxic substances are known cancer-causing agents based on peer-reviewed literature, OSHA and IARC publications, and other treatises and scientific studies.

19. Plaintiff's exposure to the toxic substances steadily over a course of many years caused, in whole or in part, his development of cancer.

20. Before and during Plaintiff's employment with Defendant, Defendant should have known that Plaintiff's exposure to the toxic substances could foreseeably lead to cancer, including the subject cancers, because studies, proceedings and literature took place and/or existed regarding the same during and/or before Plaintiff's employment, such as, for instance, and without limitation, proceedings of the Association of American Railways in the 1950s and 1960s; and studies done by epidemiologists in North America and Europe focusing on workers in occupational environments similar to Plaintiff's, including as long as ago as 1895 and up through Plaintiff's employment.

## COUNT I: NEGLIGENCE AGAINST DEFENDANT

21. Plaintiff incorporates paragraphs 1–20 as if fully set forth herein.

22. It was the duty of Defendant, as Plaintiff's employer, at all times relevant to this complaint, to use ordinary care to provide Plaintiff with a reasonably safe place in which to do his work.

23. As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to measure

the concentrations of the toxic substances released into Plaintiff's work area.

24. As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to provide adequate warnings of the dangers of the toxic substances.

25. As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to keep abreast of scientific and medical research evidence concerning the hazards of the toxic substances.

26. As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to provide hazard control.

27. "Hazard control" as used in paragraph 26 includes the use of engineering controls.

28. "Hazard control" as used in paragraph 26 includes the use of administrative controls.

29. "Hazard control" as used in paragraph 26 includes the use of personal protective equipment, including requiring the use of respirators.

30. During Plaintiff's employment, Defendant breach said duty in at least one or more of the following ways:

    a. Failure to use ordinary care and caution to provide the Plaintiff with a reasonably safe place in which to work as required by the FELA;

    b. Failure to take reasonably effective action to reduce, modify or eliminate certain job duties, equipment or practices so as to minimize or eliminate the Plaintiff's exposure to the toxic

    substances;

c.     Failure to reasonably test railroad facilities, equipment, yards, buildings, and right of ways for the presence of the toxic substances;

d.     Failure to reasonably engage in follow-up monitoring of its facilities, equipment, yards, building, and right of ways for the presence of the toxic substances;

e.     Failure to properly reduce to safe levels or remove known toxic materials and carcinogens from its facilities, equipment, yards, building, and right of ways;

f.     Failure to periodically reasonably test employees such as the Plaintiff for physical effects of exposure to the toxic substances and failing to take appropriate action, including advising the Plaintiff as to the test results;

g.     Failure to warn Plaintiff of the risk of contracting cancer or other diseases as a result of exposure to the toxic substances;

h.     Failure to make reasonable efforts to inspect or monitor the levels/amounts of exposure, of Plaintiff, to the toxic substances;

i.     Failed to keep abreast of scientific and medical research evidence concerning the hazards of the toxic substances; and

j.     Failed to consult scientific and medical research evidence concerning the hazards of the toxic substances.

31. The aforesaid occurrences were caused in whole or in part by the negligence of Defendant and/or the negligence of Defendant's agents, servants and/or employees.

32. It was the duty of Defendant, as Plaintiff's employer, at all times relative to this complaint, to use ordinary care to provide Plaintiff with reasonably safe and suitable tools, machinery, and appliances with which to do his work.

33. Using ordinary or reasonable care to furnish those tools which are reasonably safe and suitable, as described in paragraph 32 included at least requiring Plaintiff to wear a respirator mask.

34. Using ordinary or reasonable care to furnish those tools which are reasonably safe and suitable, as described in paragraph 32 included at least the monitoring of equipment emissions of any of the toxic substances, which includes reasonably upgrading equipment, either in whole or in part, so as to implement technology that reduced equipment emissions of any of the toxic substances.

35. During Plaintiff's employment, Defendant breached said duty in at least one or more of the following ways:

   a. Failure to provide adequate ventilation systems for diesel exhaust where Plaintiff regularly worked;

   b. Failure to provide Plaintiff with knowledge as to what would be reasonably safe and sufficient apparel and proper protective equipment to protect him from being poisoned and injured by exposure to the toxic substances; and,

   c. Failure to provide Plaintiff with protective equipment designed to protect him from exposure to the toxic substances.

36. The Federal Locomotive Inspection Act, 49 USC § 20701, requires that locomotives are in proper condition and safe to operate without unnecessary danger of personal injury and Amtrak failed to satisfy this requirement during the course of Plaintiff's employment in at least the following respects:

   a. Failure to provide the Plaintiff with locomotives that had proper, working, and adequate ventilation and/or air filtration systems, the failure of which allowed diesel fumes, diesel exhaust, herbicides, coal dust, brake dust, PAHs, and benzene to accumulate in train compartments at toxic levels;

   b. Failure to install proper engine exhaust filters which allowed diesel fumes, diesel exhaust, PAHs, and benzene to accumulate in train compartments at toxic levels;

   c. Failure to institute proper maintenance procedures, preventing toxic dust, fumes, and soot—described above—from accumulating in train compartments at toxic levels;

   d. Failure to utilize lower emissions fuel such as bio diesel which allowed diesel fumes, diesel exhaust, PAHs, and benzene to accumulate in train compartments at toxic levels; and,

   e. Failure to mandate cleaner burning engines from the locomotive manufacturers which allowed diesel fumes, diesel exhaust, PAHs, and benzene to accumulate in train compartments at toxic levels.

37. The aforesaid occurrences were caused in whole or in part by the negligence of Defendant and/or the negligence of Defendant's agents, servants, and/or employees.

38. As a direct result of one or more of the foregoing negligent acts of Defendant, in addition to others not specifically mentioned but that may be discovered during litigation, Plaintiff developed cancer.

39. Plaintiff experienced and endured and in the future will experience and endure: pain and suffering, inconvenience, irritation, annoyance; emotional distress; medical expenses associated with diagnosis and treatment; lost wages, disability, loss of normal life, increased susceptibility to injury, shortened life expectancy, and caretaking expenses, in addition to other injuries and expenses that would otherwise not have been necessary absent Defendant's negligence.

40. Plaintiff suffers from a constant fear of death because of his cancer.

41. Plaintiff first learned of facts that would cause a reasonable person to investigate whether Defendant's negligence was a potential cause of Plaintiff's colorectal cancer at no point before approximately March 2, 2021.

42. At approximately that date, but no later than July 12, 2021, when Plaintiff retained counsel, Plaintiff first leaned via a legal services advertisement of facts that would cause a reasonable person to investigate whether Defendant was a potential cause of Plaintiff's colorectal cancer.

43. Plaintiff requests trial by jury.

**WHEREFORE**, the Plaintiff demands judgment in his favor against the Defendant in a sum in excess of $50,000 plus the costs of this suit and any other relief the Court may grant.

Dated: March 8, 2022

Respectfully Submitted,

| **POOLSON | ODEN** | **MARC J. BERN & PARTNERS, LLP** |
|---|---|

*/s Carisa German-Oden*

Carisa German-Oden (La. Bar No. 31463)
Daniel J. "Danny" Poolson, Jr. (La Bar No. 30676)
One Lakeway
3900 N. Causeway Blvd., Suite 680
Metairie, LA 7002
Phone: (504) 766-2200
Fax:    (504) 766-2070
Email: carisa@poolsonoden.com
Email: danny@poolsonoden.com

*/s Stephen F. Monroe*

Stephen F. Monroe, IL#6305823, *pro hac vice pending*
Benjamin A. Sweeney, Il#6321594, *pro hac vice pending*
Marc J. Bern & Partners, LLP
225 West Washington Street, Suite 2200
Chicago, IL 60606
Phone: (312) 894-7941
Fax:    (312) 873-4537
Email: smonroe@bernllp.com